## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARIEN HOUSER,** | : | **Civil No. 3:24-CV-603** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN WETZEL, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM AND ORDER</u>

### I.    <u>Factual Background and Procedural History</u>

This is a *pro se* prisoner civil rights action that was originally brought as a single lawsuit by six inmates held by the Department of Corrections challenging what they allege was unconstitutionally prolonged and severe solitary confinement by corrections staff. (Doc. 1). According to the plaintiffs, they suffered severe emotional and psychological injuries due to this prolonged solitary confinement. (<u>Id.</u>) However, a review of the plaintiffs' complaint revealed that these alleged instances of solitary confinement occurred at different places and times over the past two decades. (<u>Id.</u>) Further, the complaint asserted that each individual prisoner plaintiff suffered from distinct emotional impairments which were exacerbated in different ways by their confinement. (<u>Id.</u>) Thus, factually, these six plaintiffs' claims

involved disparate acts and actors which have had different and distinct impacts upon their lives.

On November 10, 2023, this case was referred to the undersigned for case management. Upon review, we noted that there were a number of motions pending in this case, including a motion signed by one plaintiff, George Lopez, who purported to speak on behalf of two other plaintiffs, Richard Poplawski and Gerald Watkins. (Doc. 135). In this motion, these three inmate plaintiffs sought to sever their case from the complaints of plaintiffs Darien Houser, Ralph Stokes, and Jose Uderra. (Id.)

The defendants took no position with respect to this motion, "as it appears to be a dispute between the Plaintiffs." (Doc. 154). However, there was no indication that Uderra, Houser and Stokes were served with a copy of this pleading filed by their erstwhile co-plaintiffs. Moreover, it was uncertain if inmates Richard Poplawski and Gerald Watkins concurred in Lopez's motion to sever parties. Therefore, we were unclear regarding the position of all of these other plaintiffs on this request. Recognizing that this motion highlighted a number of the difficulties, challenges, and perils inherent in multi-plaintiff *pro se* litigation on November 28, 2023 we entered an order which denied the *pro se* motion to sever plaintiffs, (Doc. 135), without prejudice and directed the plaintiffs to individually show cause on or

before **December 18, 2023**, why their separate claims should not be severed into separate and distinct complaints. (Doc. 160).

We received some partial responses to this order, responses which highlighted the burgeoning procedural chaos and discord which the current collective *pro se* litigation created. Specifically, two of these inmate plaintiffs—Darien Houser and Ralph Stokes—objected to inmate Lopez's plan to unilaterally jettison them from this collective lawsuit. (Docs. 164 and 165). For his part, inmate Lopez filed a response which decries the lack of assistance and cooperation from his co-plaintiffs. Purporting then to speak on his own behalf, and on behalf of inmates Richard Poplawski and Gerald Watkins, Lopez agreed to the severance of these six cases. (Doc. 170). Poplawski and Watkins did not separately respond to this order. The final *pro se* plaintiff, inmate Uderra, also did not respond to this court order.

Given this procedural posture, we recommended that the increasingly discordant claims of these six inmate plaintiffs be severed. (Doc. 172). The district court adopted this recommendation and these cases have now been severed. (Doc. 192).

It is against this backdrop that we turn to consider two motions filed by inmate Darien Houser, which seek disclosure of this prisoner's medical records and

appointment of counsel. (Docs. 167[1], 173). In considering this motion by Houser for access to his medical records, we recognize that we do not write upon a blank slate. Quite the contrary, in March of 2023, the court considered an identical request and the defendants' response that inmate plaintiffs could review their medical records in accordance with prison policies. The Court expressly endorsed this approach to medical record discovery stating that: "The Court finds that compliance with the prison regulations is a fitting and proper procedure for Plaintiffs to follow in securing access to these medical records. Indeed, in this regard we note that courts have frequently directed or encouraged inmates to comply with reasonable institutional procedures when securing copies of their own prison medical records for litigation purposes." (Doc. 122 at 10). Accordingly, the court ordered that: "Plaintiffs shall be able to access their medical records, provided they comply with Department of Corrections procedures for obtaining this information and that they bear the cost for this production." (Id. at 11).

Notwithstanding this March 2023 ruling, Houser has now twice moved to compel production of his medical records. (Docs. 167, 173). Each time the defendants have reminded Houser of the procedure for obtaining such access and

---

[1] Doc. 167 is docketed as a motion filed by Plaintiff George Lopez, but a review of the motion indicates that it was authored by inmate Houser.

have noted that, to the best of their knowledge, Houser has not followed these procedures.

On these facts, as discussed below, Houser's motions to compel, (Docs. 167, 173), will be DENIED. In addition, Houser's motion for appointment of counsel, (Doc. 173), will be DENIED.

## II.   **Discussion**

### A. **Houser's Motions to Compel Will Be Denied**

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic

Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also
Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45
(N.D.N.Y. 1999) (holding that discovery rulings are reviewed under
abuse of discretion standard rather than de novo standard); EEOC v.
Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a
magistrate judge's resolution of discovery disputes deserves substantial
deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles.
At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines
the scope of discovery permitted in a civil action, prescribes certain limits to that
discovery, and provides as follows:

(b) Discovery Scope and Limits.

(1) *Scope in General*. Unless otherwise limited by court order, the scope
of discovery is as follows: Parties may obtain discovery regarding any
nonprivileged matter that is relevant to any party's claim or defense and
proportional to the needs of the case, considering the importance of the
issues at stake in the action, the amount in controversy, the parties'
relative access to relevant information, the parties' resources, the
importance of the discovery in resolving the issues, and whether the
burden or expense of the proposed discovery outweighs its likely
benefit. Information within this scope of discovery need not be
admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope
of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is

relevant to any party's claim or defense." Accordingly, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("Although 'the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.' Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information") (internal citations omitted)).

Therefore, at the outset, it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus, we are now enjoined to also consider whether

7

the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.'" Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

Further, in a case such as this where the district court has already addressed a particular discovery request, one other consideration comes into play—the law of the case doctrine. As we have explained:

> "Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances. The purpose of this doctrine is to promote the 'judicial system's interest in finality and in efficient administration. Todd & Co., Inc. v. S.E.C., 637 F.2d 154, 156 (3d Cir.1980).'" Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 165 (3d Cir. 1981). The contours of this settled doctrine were recently described by the United States Court of Appeals for the Third Circuit in the following terms:

>> In Arizona v. California, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), the Supreme Court noted:

>>> Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.

>>> Id. at 618, 103 S.Ct. 1382 (citations omitted). The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'"

> In re Pharmacy Benefit Managers Antitrust Litigation, 582 F.3d 432, 439 (3d Cir.2009) (reversing arbitration order in antitrust case on law-of-the-case grounds) (citations omitted). It is clear that "[t]he ... doctrine does not restrict a court's power but rather governs its exercise of discretion." Id. (quoting Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron Inc., 123 F.3d 111, 116 (3d Cir.1997)) (citations omitted). In exercising that discretion, however, courts should "be loathe to [reverse prior rulings] in the absence of extraordinary circumstances such as where the initial decision was

clearly erroneous and would make a manifest injustice." Id. (quoting
Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108
S.Ct. 2166, 100 L.Ed.2d 811 (1988)). In addition to that narrow class
of cases where the prior ruling was manifestly unjust, the type of
"extraordinary circumstances" that warrant a court's exercising its
discretion in favor of reconsidering an issue decided earlier in the
course of litigation typically exist only where (1) new evidence is
available, or (2) a supervening new law has been announced. Id. (citing
Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,
123 F.3d 111, 117 (3d Cir.1997)).

Leslie v. Holder, 865 F. Supp. 2d 627, 633–34 (M.D. Pa. 2012).

Applying these principles, we will deny Houser's motions to compel
disclosure of these medical records since the district court has already prescribed an
appropriate path for Houser to follow in obtaining medical record access, and
nothing in Houser's current motions suggests that adherence with this procedure
ordered by the court in March of 2023 results in a manifest injustice.

### B. **Houser's Motion for Appointment of Counsel Will Be Denied**.

Houser has also requested the appointment of counsel. While we appreciate
the plaintiff's on-going interest in securing court-appointed counsel, we also
recognize that there is neither a constitutional nor a statutory right to counsel for
civil litigants.  Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997); Tabron v.
Grace, 6 F.3d 147, 153 (3d Cir. 1993).  Instead, 28 U.S.C. § 1915(e)(1) simply
provides that "[t]he court may request an attorney to represent any person unable to
employ counsel." Under §1915(e)(1), a district court's appointment of counsel is

discretionary and must be made on a case-by-case basis.  <u>Tabron</u>, 6 F.3d at 157-58.

In <u>Parham</u>, the United States Court of Appeals outlined the standards to be

considered by courts when reviewing an application to appoint counsel pursuant to

28 U.S.C. § 1915(e)(1). In passing on such requests we must first:

> [D]etermine[] that the plaintiff's claim has some merit, then [we] should
> consider the following factors: (1) the plaintiff's ability to present his or
> her own case; (2) the complexity of the legal issues; (3) the degree to
> which factual investigation will be necessary and the ability of the
> plaintiff to pursue such investigation; (4) the amount a case is likely to
> turn on credibility determinations; (5) whether the case will require the
> testimony of expert witnesses; [and] (6) whether the plaintiff can attain
> and afford counsel on his own behalf.

<u>Parham v. Johnson,</u> 126 F.3d at 457.   There is yet another practical consideration

which must be taken into account when considering motions for appointment of

counsel. As the United States Court of Appeals for the Third Circuit has aptly

observed:

> Finally, in addressing this issue, we must take note of the significant
> practical restraints on the district courts' ability to appoint counsel: the
> ever-growing number of prisoner civil rights actions filed each year in
> the federal courts; the lack of funding to pay appointed counsel; and the
> limited supply of competent lawyers who are willing to undertake such
> representation without compensation. We have no doubt that there are
> many cases in which district courts seek to appoint counsel but there is
> simply none willing to accept appointment. It is difficult to fault a
> district court that denies a request for appointment under such
> circumstances.

Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993). Mindful of this consideration, the

Third Circuit has emphasized that:

> [V]olunteer lawyer time is extremely valuable. Hence, district courts
> should not request counsel under § 1915(d) indiscriminately. As the
> Court of Appeals for the Second Circuit has warned: Volunteer lawyer
> time is a precious commodity. . . . Because this resource is available in
> only limited quantity, every assignment of a volunteer lawyer to an
> undeserving client deprives society of a volunteer lawyer available for
> a deserving cause. We cannot afford that waste.

Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993) (quoting Cooper v. A. Sargenti Co.,

877 F.2d 170, 172 (2d Cir. 1989)).

In this case our analysis of these factors leads us to conclude that counsel

should not be appointed in this case at the present time. At the outset, appointment

of counsel would be premature since we have not had the opportunity to fully

consider the threshold factor we must examine: the arguable merits of the plaintiff's

claims. In any event, the issues in this case appear to be well-known to the plaintiff,

who has thus far shown the mental, and legal acuity to litigate his claims.

Accordingly, this motion for appointment of counsel will be denied without

prejudice to further consideration as this case proceeds forward.

An appropriate order follows.

III.   **Order**

In accordance with the accompanying Memorandum, Houser's motions to compel, (Docs. 167, 173), are DENIED. In addition, Houser's motion for appointment of counsel, (Doc. 173), is DENIED.

So ordered this 1ˢᵗ day of May 2024.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge