**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARIEN HOUSER,** | : | **Civil No. 3:24-CV-603** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Judge Mehalchick)** |
| **v.** | : | |
| | : | |
| **JOHN WETZEL, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

**MEMORANDUM AND ORDER**

## I. Factual Background and Procedural History

This is a *pro se* prisoner civil rights action that was originally brought as a single lawsuit by six inmates held by the Department of Corrections challenging what they allege was unconstitutionally prolonged and severe solitary confinement by corrections staff. (Doc. 1). Following the severance of these cases, inmate Darien Houser is proceeding *pro se* with his own individual claims. According to the plaintiff, he suffered severe emotional and psychological injuries due to this prolonged solitary confinement. (Id.)

It is against this backdrop that we turn to consider three closely related motions. First, there is a motion to compel filed by inmate Darien Houser which seeks production of documents previously promised by the defense. (Doc. 224). The defendants have responded to this motion observing that they have sent two boxes

containing what are described as thousands of pages of material to the plaintiff. (Doc. 225). For his part, Houser seems to have acknowledged the receipt of these documents, since he filed a motion to stay proceedings which reports the receipt of four bags of documents, each of which contains approximately 2,500 pages of material, but complains that some of the documents are damaged, illegible or disorganized necessitating a stay of proceedings. (Doc. 228).

In considering Houser's latest motion to compel, we recognize that we do not write upon a blank slate to the extent Houser seeks access to his own medical records. Quite the contrary, in March of 2023, the Court considered an identical request and the defendants' response that inmate plaintiffs could review their medical records in accordance with prison policies. The Court expressly endorsed this approach to medical record discovery stating that: "The Court finds that compliance with the prison regulations is a fitting and proper procedure for Plaintiffs to follow in securing access to these medical records. Indeed, in this regard we note that courts have frequently directed or encouraged inmates to comply with reasonable institutional procedures when securing copies of their own prison medical records for litigation purposes." (Doc. 122 at 10). Accordingly, the Court ordered that: "Plaintiffs shall be able to access their medical records, provided they comply with Department of Corrections procedures for obtaining this information and that they bear the cost for this production." (Id. at 11).

Further, Houser's motion may be untimely since discovery in this matter closed on July 17, 2026, (Doc. 223), yet Houser filed this motion on August 10, 2026. (Doc. 224). Moreover, to the extent that Houser was decrying a total failure to produce documents, it is apparent that he has now received these records, rendering this particular concern moot.

These two discovery-related motions, in turn, are filed against the backdrop of a defense motion for partial summary judgment. (Doc. 226). Houser has not yet responded to this motion, and his motion to stay cites these discovery issues as the reason for his delay in responding. Thus, currently Houser's discovery and stay motions are preventing merits briefing of the defense summary judgment motion.

In order to break this legal logjam, for the reasons set forth below, Houser's motion to compel, (Doc. 224), will be DENIED, and Houser's motion to stay (Doc. 228), will be DENIED, but Houser's request for extension of time in which to respond to the summary judgment motion will be GRANTED.

## II. **Discussion**

### A. **Houser's Motions to Compel and Stay Will Be Denied But We Will Grant Houser an Extension of Time in Which to Respond to the Summary Judgment Motion**

We turn first to Houser's latest motion to compel noting that rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. The court's decisions regarding the conduct of discovery will be disturbed

only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

(b) Discovery Scope and Limits.

> (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Accordingly, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("Although 'the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.' Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information") (internal citations omitted)).

Therefore, at the outset, it is clear that Rule 26's definition of that which can be obtained through discovery reaches any nonprivileged matter that is relevant to any party's claim or defense, and valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information, a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rather, Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This concept of relevance is tempered, however, by principles of proportionality. Thus, we are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.'" Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009).

Further:

One other immutable factor governs the scope of discovery under Rule 26.

> "It is an obvious truism that a court should not enter an order compelling a party to produce documents where the documents do not exist." Wells v. JPC Equestrian, Inc., No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014). It is clear, therefore, that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D. Pa. April 9, 2009). See Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2019 WL 5622453, at *4 (M.D. Pa. Oct. 31, 2019).

Lopez v. Wetzel, No. 3:21-CV-1819, 2024 WL 2055041, at *4 (M.D. Pa. May 6, 2024).

In addition, there are factors unique to prison litigation that inform the exercise of our discretion when addressing inmate discovery issues. In a prison setting, inmate requests for information relating to security procedures can raise profound security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a governmental need for confidentiality of certain data but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Torres v. Harris, No. 4:17-CV-1977, 2019 WL 265804, at *3–4 (M.D. Pa. Jan. 18, 2019) (quoting Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

Further, in a case such as this where the district court has already addressed a particular discovery request, one other consideration comes into play—the law of the case doctrine. As we have explained:

> "Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances. The purpose of this doctrine is to promote the 'judicial system's interest in finality and in efficient administration. Todd & Co., Inc. v. S.E.C., 637 F.2d 154, 156 (3d Cir.1980).'" Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 165 (3d Cir. 1981). The contours of this settled doctrine were recently described by the United States Court of Appeals for the Third Circuit in the following terms:
>
>> In Arizona v. California, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), the Supreme Court noted:
>>
>>> Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.
>>
>> Id. at 618, 103 S.Ct. 1382 (citations omitted). The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'"
>
> In re Pharmacy Benefit Managers Antitrust Litigation, 582 F.3d 432, 439 (3d Cir.2009) (reversing arbitration order in antitrust case on law-of-the-case grounds) (citations omitted). It is clear that "[t]he ... doctrine does not restrict a court's power but rather governs its exercise of discretion." Id. (quoting Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron Inc., 123 F.3d 111, 116 (3d Cir.1997)) (citations omitted). In exercising that discretion, however, courts should "be loathe to [reverse prior rulings] in the absence of extraordinary circumstances such as where the initial decision was

> clearly erroneous and would make a manifest injustice." Id. (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). In addition to that narrow class of cases where the prior ruling was manifestly unjust, the type of "extraordinary circumstances" that warrant a court's exercising its discretion in favor of reconsidering an issue decided earlier in the course of litigation typically exist only where (1) new evidence is available, or (2) a supervening new law has been announced. Id. (citing Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir.1997)).

Leslie v. Holder, 865 F. Supp. 2d 627, 633–34 (M.D. Pa. 2012).

One other consideration also applies here:

> Finally, we note that "where a party has submitted an untimely discovery request, the court can, and in the exercise of its discretion often should, refuse to compel compliance with that request." Muniz v. Price, No. 3:10-CV-345, 2010 WL 4537037, at *2 (M.D. Pa. Nov. 3, 2010); see, e.g., Maslanka v. Johnson & Johnson, 305 F.App'x 848 (3d Cir. 2008) (affirming denial of *pro se* litigant motion to compel where discovery demands were untimely); Oriakhi v. United States, 165 F.App'x 991 (3d Cir. 2006) (same); Bull v. United States, 143 F.App'x 468 (3d Cir. 2005) (same).

Nunez v. Wolf, No. 3:15-CV-1573, 2022 WL 673742, at *4 (M.D. Pa. Mar. 7, 2022).

Applying these principles, we will deny Houser's motion to compel. First, since Houser by his own admission has now received approximately 10,000 pages of material, to the extent that he was alleging a complete failure to produce documents, that request is moot. Additionally, his motion to compel may be untimely since it was filed one month after the close of discovery. Further, we cannot order the defendants to produce documents which are not in their custody or control.

Therefore, if Houser seeks records from third parties, his recourse is to subpoena those records from these third parties. Similarly, if Houser wishes to obtain access to his own DOC medical records, he has been advised that he should follow the process prescribed by DOC policies. However, mindful of the fact that Houser's motion to stay avers that some documents are illegible or damaged, we will direct the parties to consult and confer in order to ensure that any illegible documents are replaced.

As for Houser's motion to stay, (Doc. 228), while we believe that the interests of justice would not be served by a stay of all proceedings, we recognize that the *pro se* plaintiff may need additional time to review the discvery provided to him and compose a response to the summary judgment motion. Therefore, we will grant the alternative relief sought by Houser in this motion and set a new schedule for a response to the summary judgment motion.

An appropriate order follows.

## III. **Order**

In accordance with the accompanying Memorandum, Houser's motion to compel, (Doc. 224), is DENIED, but IT IS ORDERED that the parties consult and confer in order to ensure that any illegible documents previously produced are replaced on or before **December 7, 2026**. Houser's motion to stay, (Doc. 228), is DENIED, but Houser's request for extension of time in which to respond to the

summary judgment motion is GRANTED and the following briefing schedule is set with respect to the pending motion for partial summary judgment: Houser's response in opposition to the motion shall be filed on or before **January 11, 2027**. The movants' reply brief, if any, shall be filed on or before **January 25, 2027**.

So ordered this 16th day of November 2026.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge